DANIEL H. LAWRENCE, JAMES N. GRIGGS, and JOHN A. KINGSBERRY, partners, *vs.* EMELINE H. FINCH.

1. Where a husband, in the transaction of his own business, assumes to deal in his wife's name, and upon the credit of her estate, her knowledge of the fact will not operate to charge her with participation in the fraud, nor her estate with liability for the indebtedness. So long as she abstains from active co-operation with him, her silence can raise no presumption that he acted as her agent, or by her authority.

·2. In order to charge the separate estate of the wife for debts contracted by the husband in his business, there must be clear and unequivocal evidence of her assent to that arrangement.

3. It is not necessary that the *return* should show that the officer before whom the commissioner was sworn, was duly authorized to administer an oath in the state where the commission was executed. All that the court requires is competent evidence of the authority of the officer to administer the oath.

4. It is no objection to the evidence of a non-resident witness, taken by virtue of a commission, that the witness is dead.

5. An oath by a commissioner to take depositions in a foreign state, "*truly*, faithfully, and without partiality, to *take* the examinations and depositions, &c.," is a material departure from the requirements of the statute, and the testimony taken before such commissioner is inadmissible.

6. Duties of commissioners defined.

7. It is necessary to the admissibility of testimony taken before a commissioner, to show that all the requirements of the statute have been complied with.

*Mr. Flemming*, for complainants.

*Mr. Bedle*, for defendant.

THE CHANCELLOR. The bill is filed to recover from the separate estate of a married woman, the balance of an account for goods, wares, and merchandise, sold and delivered. At the time of the transactions which form the subject of controversy, the complainants were wholesale merchants in the city of New York; the defendant was the wife of George Finch, a resident of Red Bank, in this state.

The bill charges that the defendant, by herself and by her agent, George Finch, called at the complainant's store, and desired to purchase goods on credit, representing that by the death of her father she had become possessed of a valuable property, and that she also owned other real estate as her sole and separate property. That she was carrying on business in her own name and for her own account, and that in reference to her sole and separate property, and upon the faith and credit thereof, she desired to purchase goods of the complainants. That, relying on the faith and credit of her separate property, the complainants sold to the defendant a large amount of merchandise, and that payments were made from time to time by the defendant on account, but that a balance of the account still remains unpaid, which the complainants seek to recover.

The bill further charges that a large part of the goods

were delivered upon written orders, signed by the defendant, and were forwarded to her; that before and at the time the purchases were made, the defendant was carrying on business in her own name and for her own account; that her husband acted therein only as her agent, and that she assented to and ratified his acts as such; that upon her making the purchases, the defendant declared and made the indebtedness a lien and charge upon her separate property, and after the indebtedness was contracted, she frequently promised to pay it. The complainants ask the aid of the court, to obtain payment of the debt out of the separate property of the wife.

The defendant's answer fully denies all the material allegations of the bill relating to her liability for the debt.

The case made by the bill is not sustained by the evidence. The business was not carried on by the wife, but by the husband, in his own name and for his own benefit, she being with him and assisting him in the business. It is not shown that credit was obtained in the name of the wife, or upon the credit of her estate, at her request, or by her authority. The fact appears to be, that the account was originally opened in the wife's name before the death of her father, and before she became entitled to the estate which it is now sought to charge with the payment of the debt. The arrangement was made by the procurement of the husband. The purchases and the payments were mainly, if not exclusively, made by him. Written orders, in the wife's name, for the delivery of goods, are proved to be in the handwriting of the husband. There is no satisfactory evidence that they were written or sent by her authority, or with her knowledge. There is no direct verbal or written communication from the wife to the complainants, by which she asked credit for the indebtedness, assumed its payment, or made it a charge upon her separate estate.

There is evidence that the wife was sometimes in the complainant's store, that one or more purchases were made by her, and that the articles were uniformly forwarded to her

address. And the fact that they were so forwarded is shown to have been known to her. If, in fact, the business had been carried on in the name of the wife, and the purchases had enured to her benefit, these facts might have been cogent evidence of the agency of the husband, and of his authority to purchase upon the credit of the wife. But where a husband, in the transaction of his own business, assumes to deal in his wife's name, and upon the credit of her estate, her knowledge of the fact will not operate to charge her with participation in the fraud, nor her estate with liability for the indebtedness. So long as she abstains from active co-operation with him, her silence can raise no presumption that he acted as her agent, or by her authority. The wife is under coverture, and so long as she maintains that character, without assuming to act as a *feme sole*, she cannot be required to interfere in the management of his affairs, or even to expose his wrongful acts. She may remain silent without incurring the imputation of intentional fraud, or charging her estate with liability for his debts.

The acts and declarations of the wife, in order to charge her separate estate, should be clear and unequivocal. No doubt should exist as to her intention. If the party dealing with the husband, means to rely upon the credit of the wife's estate, good faith and fair dealing require that he should obtain clear evidence of her assent to that arrangement. The evidence in the case is not sufficient to satisfy me that the husband acted by the authority, or as the agent, of the wife in procuring the credit in her name, that such credit was procured by her, or that she charged the indebtedness upon her separate estate.

But if it be admitted that the evidence in the case is sufficient to show that the credit was obtained in the wife's name, by her authority, the question would still remain, whether the separate estate of the wife would be held liable in equity for her general contracts, where the debt was not created for the benefit of the estate, or for her own benefit upon the credit of it. The cases in this state have not gone so far.

The remedy at law, given by the act of March 24th, 1862, (*Pamph. L.* 271), for the recovery of debts contracted by married women, will probably render the decision of the question of little practical importance. Its solution is not necessary for the determination of this cause.

The testimony of Daniel H. Lawrence, jun., one of the witnesses on the part of the complainant, resident in the state of Minnesota, was taken in that state, under a commission issued out of this court. This evidence is objected to, on the ground that the commission was not executed pursuant to the statute.

1. It does not appear that the officer before whom the commissioner was sworn, was duly authorized to administer an oath in the state where the commission was executed. It appears by the *jurat*, that the commissioner was sworn before the "register of deeds, Winona county, Minnesota." The officer does not certify, nor does it otherwise appear on the face of the commission, that he was authorized to administer an oath. But the fact does appear by the statutes of Minnesota, published by authority, which are competent testimony in the cause, that registers of deeds are duly authorized to administer oaths in that state. This is sufficient. It is not necessary (although both proper and expedient) that the authority should appear upon the face of the return. All that the court require is competent evidence of the authority of the officer to administer the oath. *Den* v. *Thompson*, 1 *Harr.* 74.

2. It is no objection to the admission of the evidence, that the witness is dead. That is one of the contingencies which, by the express terms of the act, renders the evidence competent. The tenth section of the act extends as well to the examination of a non-resident witness, taken by virtue of a commission, as to depositions taken in this state.

3. It is further objected that the evidence is inadmissible, because the commissioner did not take the oath prescribed by the statute. The oath taken by the commissioner was identical with the form found in *Potts' Precedents* 107. It

is a literal copy (with some omissions) of the oath prescribed by Lord Chancellor Macclesfield's order of 9th February, 1721, and which has been since used in the English Court of Chancery, in taking the examination of witnesses within, as well as beyond, the jurisdiction of the court. *Beames' Orders in Chancery* 327; *Hinde's Chan. Prac.* 301; 2 *Newland's Chan. Prac.* 283; 2 *Daniell's Chan. Prac.* 1080–6.

It was doubtless introduced from the English practice into our own, although the last clause of the oath, relative to keeping secret the testimony of the witness until publication passed, has no applicability whatever to our course of practice.

The oath moreover, in its terms, is materially different from that prescribed by our statute. *Nix. Dig.* 925, § 2. The oath prescribed by the statute is, that the commissioner will faithfully, fairly, and impartially execute the commission. The oath taken by the commissioner is, that he will, according to the best of his skill and knowledge, truly, faithfully, and without partiality to any or either of the parties in this cause, take the examinations and depositions of all and every witness and witnesses produced and examined by virtue of the commission hereunto annexed, upon the interrogatories now produced and left with me, and that I will not publish, &c.

The word "truly" has been substituted in the oath for "fairly." The words are not synonymous. They have widely different shades of meaning, and convey entirely distinct ideas. Every day's experience teaches us that language may be truly, yet most unfairly repeated. The answer of the witness may be truly written down, yet it may convey a meaning quite different from that which the witness intended to convey, and did convey to the person that heard him speak. On the other hand, language may be fairly reported, yet not in accordance with strict truth. It was held by the Supreme Court in *Den* v. *Thompson*, 1 *Harr.* 72, that the omission of either of the terms used in the prescribed oath, without substituting other equivalent terms, is a substantial departure from the statute.

But there is in the oath taken, a more material departure from the oath prescribed by the statute. The oath taken extends only to the taking of the examinations and depositions of the witnesses produced before him; nothing more. In the English practice, a clerk is employed to write the testimony, and he also is sworn to take and write down the depositions truly, faithfully, and without partiality. There is a clear distinction between taking the depositions and reducing them to writing. In our practice, both duties are usually performed by the commissioner. And the oath prescribed, viz. that the commissioner will faithfully, fairly, and impartially execute the commission, includes the idea that the examination shall be truly reduced to writing, either by himself or by another. But the faithful, fair, and impartial execution of the commission includes more than merely taking the examinations and reducing them to writing. It requires that the commissioner should use due diligence to procure the attendance of the witnesses; to see that they are in a fit condition, mentally, to testify; to guard them as far as practicable against all improper bias or influence during the examination; to sign the examination of the witnesses, and to enclose it unaltered, under his hand and seal; to annex the examination signed by the witness and by the commissioner, with all the exhibits proved before him, to the commission, closed up under his hand and seal, directed to the judges of the court out of which the commission issued: and when the party asking the commission, or his attorney or agent, is not present to receive it, that he will deposit it in some post office, certifying thereon the time when, and the post office in which, the commission is so placed. All these duties devolve upon the commissioner. Unless they are performed, the commission is not faithfully and fairly executed. The oath prescribed by the statute extends to and includes the faithful performance of all these duties. The oath taken is obviously much less comprehensive, and is a material departure from the requirements of the statute.

The authority to take testimony in this manner, is in

derogation of the rules of the common law, and has always been construed strictly. It is necessary to show that all the requirements of the statute have been complied with, or the testimony is not admissible. *Hendricks* v. *Craig*, 2 *South.* 568; *Bell* v. *Morrison*, 1 *Peters* 355; 1 *Greenl. Ev.*, § 323.

The act authorizing the taking the testimony of non-resident witnesses by commission, in terms extends to the Court of Chancery, and its requirements as to the mode of executing the commission, are equally as imperative and binding upon this court, as upon the courts of common law.

Neither the act of 1790, which directed the mode of the examination of witnesses in this court, nor the original act authorizing commissions and the taking of depositions, required the commissioner authorized to take the examination of witnesses resident out of the state, to be sworn. *Pamph. Laws* (1790,) 628, § 3; *Paterson's Laws* 374; 1 *Hoffman's Ch. Pr.* 478, *and note* 6; 3 *Hoffman's Ch. Pr.* 137.

The act requiring the commissioner to take an oath, was first passed in 1821. That enactment now constitutes the second section of the act of 1846. *Harrison's Comp.* 11; *Nix. Dig.* 925, § 2. It requires that the oath should be taken, as well by the commissioners appointed under the general power and authority of this court, as by those appointed under the provisions of the statute. It was obviously the design of the legislature to subject the taking of testimony by commission, in all the courts having civil jurisdiction, to the same restrictions and regulations. Parties litigant are entitled to all the guaranties which the statute has given them, to secure the fair and faithful execution of the commission, and to guard against all fraud and abuse in the taking and transmission of the testimony.

The evidence taken under the commission must be overruled.